
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 18, 2017 at Knoxville

## STATE OF TENNESSEE v. EBONY MARSHALL

**Appeal from the Criminal Court for Shelby County
Nos. 13-05966, 13-05021    James C. Beasley, Jr., Judge**

_____

### No. W2015-01835-CCA-R3-CD

_____

The Defendant, Ebony Marshall, was convicted upon his guilty pleas of two counts of robbery, a Class C felony. He was sentenced to terms of twelve and thirteen years as a persistent, Range III offender for the offenses. The sentences were imposed to run consecutively, for an effective sentence of twenty-five years. The Defendant filed a motion to withdraw his guilty plea, which the trial court denied. On appeal, the Defendant contends that: (1) the trial court erred in denying his motion to withdraw his guilty pleas, (2) the trial court erred in imposing consecutive sentences, and (3) he was denied his rights to due process and self-representation in the trial court proceedings. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Ebony Marshall, Memphis, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; Jose Leon and Kenya Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions relate to robberies that occurred in Shelby County on May 25, 2013, and September 10, 2013. The record reflects that the Defendant was represented variously by multiple attorneys, was allowed to proceed pro se at the Defendant's request, and was assisted by advisory counsel at different stages of the trial court proceedings. The Defendant has elected to proceed pro se in this appeal.

On July 6, 2015, the Defendant pleaded guilty to both counts of robbery. The record reflects that he was represented by counsel. According to the prosecutor's recitation of facts at the hearing, the circumstances of the offenses are as follow:

[The defendant] is doing an open plea to Indictment 13-05021 to the offense of robbery, a Class (C) Felony. . . . The fact pattern on that would have been that on May the 25th, 2013[,] officers responded to a robbery at 925 Poplar Avenue. Briana Walls (phonetically) the complainant advised that she was checking out another customer when the defendant jumped over the counter. He was – she had her hand on the right side of the cash register.

The victim complained that the defendant grabbed her hand and pushed it out of the way and grabbed the money, took the money and jumped off the counter and ran out – out the business what is the westbound location. Witness Randy (indiscernible) advised that when he turned around he saw the defendant on the counter grabbing the money so he ran towards the suspect. A witness, Michael Norfleet, advised he was in the drive-thru when he heard the commotion. This individual, Michael Norfleet, chased the defendant down Poplar and Dunlap. He advised that the suspect took the money out of his pockets and threw it on the ground. He picked up the money and brought it back with the [defendant] back to 925 Poplar where the offense occurred.

Officer Bernell (phonetically) counted the money and there was a total of $45. Officer Rector made the [scene]. [The defendant] was arrested and transported to 201 Poplar. This offense occurred in Shelby County.

[The defendant] is also doing an open plea to Indictment 13-05966 to the offense of robbery . . . . And should these matters [have] gone to trial[,] the facts would have been that on September 10th, 2013 at 5:30 p.m. an individual entered the McDonald's located at 1389 Poplar where Kiera Hawkins, Audrey Davis and Felix (indiscernible) were employed. He stood in line and waited until the cash register was opened by Kiera Hawkins. When it was open, the male suspect, the defendant, jumped onto the counter and placed both hands in the drawer. Kiera Hawkins, the witness, tried to shut up the register but she was forced away by the defendant. He was able to retrieve $39 in cash from the drawer and flee the business.

Audrey Davis was standing beside Kiera Hawkins when this occurred and she fell to the ground. On September the 12, Sergeant Vincent developed [the defendant] as a suspect in this incident. He went to

the McDonald's at 1389 Poplar. . . . Felix (indiscernible) and Audrey Davis were shown [a] photographic lineup by the investigator and they identified the [defendant] as the individual responsible for the incident. This occurred here in Shelby County.

The Defendant was sentenced, and judgments were filed on August 11, 2015. He filed various pro se pleadings, including a notice of appeal on September 3, 2015. His appointed attorney filed a notice of appeal on September 10, 2015. The Defendant filed a pro se "notice of withdrawal of guilty plea" in case number 13-05966 on October 1, 2015. On November 3, 2015, the trial court granted the Defendant's counsel's motion to withdraw and appointed an attorney who had represented the Defendant in earlier stages of the case. The court's order also purported to stay the appeal pending resolution of the motion to withdraw the guilty plea. On November 18, 2015, the court admonished in an order denying a motion for extension of time that the Defendant could not proceed simultaneously through counsel and pro se and cautioned that future pleadings should be filed by counsel. On February 2, 2016, the Defendant filed another pro se motion to withdraw his guilty pleas, which listed case numbers 13-05021 and 13-05966.

The trial court conducted a hearing on the motion to withdraw the guilty pleas on February 18, 2016, and the Defendant proceeded through counsel. The Defendant and the attorney who represented him at the time of the guilty pleas testified. The Defendant testified that his guilty pleas in the present case had been his first "open" pleas and that he had not understood he faced up to thirty years due to the possibility of consecutive sentencing. He acknowledged that he had thirteen to fifteen prior convictions, all of which had resulted from negotiated guilty pleas, and that the court had sentenced him as a Range III offender. He said counsel had advised him that he did not qualify for mandatory consecutive sentences and that "there's a chance that the Judge would probably run them concurrent." He said counsel had no further conversation about consecutive sentences with him. The Defendant stated that "there is no way [he] would have" accepted an open plea if he had known he would receive consecutive sentences. He said that, when he accepted the plea offer, he thought the court would be lenient and impose an effective fifteen-year sentence. He stated that he thought he would have prevailed at a trial but had not wanted to wait two to three years for a trial. The Defendant acknowledged a passage in the transcript of the guilty plea hearing in which the court advised him that he faced three to fifteen years on each robbery charge. The Defendant said, though, that he was only scheduled for trial on one of his three then-pending cases and questioned "why would we talk about [a] consecutive sentence, if I was going for one case." He said his attorney did not say anything to him about a consecutive sentence. The Defendant acknowledged that he had answered negatively when asked by the court at the guilty plea hearing whether anyone was making him plead guilty and said that no one made him plead guilty. He said he was "looking for a way out" and wanted to settle the case in order to get out of jail while he was young. He reiterated that he thought he would receive a fifteen-year sentence. When asked about his

-3-

statement at the guilty plea hearing that he had been satisfied with counsel and that counsel had done a good job, the Defendant said, "That was sarcasm." The Defendant stated he had filed numerous complaints with the Board of Professional Responsibility against counsel.

The Defendant's former attorney testified that he explained the possible consequences of the plea offer to the Defendant. He said that for "major violators," he prepared a "charge exposure offer sheet" that explained count-by-count the sentencing exposure a defendant faced and the State's corresponding offer. He said he prepared such a document for the Defendant. Counsel said he and the Defendant had multiple conversations about the possibility of consecutive sentencing. Counsel stated that he advised the Defendant that mandatory consecutive sentencing did not apply to the Defendant's cases. Counsel stated that he had written a March 25, 2014 letter to the Defendant advising that counsel thought it unlikely the prosecutor would agree to the Defendant's proposed settlement in another case of five years on probation on two counts of aggravated assault. Counsel said he also advised the Defendant in the letter that counsel believed the plea offer was in the Defendant's best interests because the Defendant faced up to 120 years. Counsel stated in the letter that even if the Defendant were not convicted of the robbery charges, the Defendant nevertheless faced up to thirty years for the two aggravated assault charges, given the likelihood of consecutive sentencing.

The Defendant's former attorney testified that the Defendant asked about a settlement "a number of times" on the day the first case was set for trial. Counsel said he asked the prosecutor about a "package deal" but that the prosecutor said the only settlement option was an "open plea." Counsel said he explained to the Defendant that if the Defendant accepted an open plea, the trial court had the discretion to impose consecutive sentencing and that consecutive sentencing was a "very distinct possibility." Counsel said he did not "twist [the Defendant's] arm" in order for the Defendant to plead guilty. He said the Defendant did not appear to be intoxicated or impaired.

The Defendant's former attorney testified that he requested that the hearing be bifurcated because the Defendant wanted to be considered for the Jericho Project. The attorney said that ultimately, his office received a letter stating that the Defendant was not eligible for consideration because of another pending case.

The Defendant's former attorney testified that he explained the State's pleadings related to notification of intent to seek enhanced punishment, consecutive sentencing, and for application of enhancement factors. Counsel stated that he received a letter from the Defendant, which was dated the day after the sentencing hearing, in which the Defendant thanked the attorney for "exceptional effort" on the Defendant's behalf.

The Defendant's former attorney testified that he filed a timely notice of appeal but that the Defendant had been concerned the notice would not be filed promptly and filed a pro se notice of appeal. Counsel agreed with the following recollection of the trial court:

[Y]ou were originally appointed and then [the Defendant] indicated that he wanted to represent himself. I allowed him to represent himself for an extensive period of time. Then he asked for assistance, again. I asked you to [be] elbow counsel and then he wanted you to handle the case for him[.]

Counsel recalled that while acting pro se, the Defendant obtained remands for a preliminary hearing relative to two indictments, that the Defendant represented himself at one of the preliminary hearings, and that the attorney represented the Defendant at the second preliminary hearing. Counsel agreed with the court's characterization of the Defendant as "very, very involved in" the Defendant's cases and "very, very proficient" at drafting and filing pleadings and making requests. Counsel agreed with the court's recollection that the Defendant believed he had committed theft, not robbery, because the Defendant snatched money but did not employ force and violence. Counsel said that at times, however, the Defendant took the position that he had not been present for the offenses. Counsel said he explained to the Defendant that even if the Defendant prevailed in a couple of the indictments, the Defendant might still receive a sentence greater than the State's twenty-year offer at 85%.

The transcript of the guilty plea hearing was received as an exhibit at the hearing on the motion to withdraw the guilty pleas. This transcript reflects that the trial court questioned the Defendant about his understanding of the terms of the plea agreement and his right to a trial. In this examination, the Defendant acknowledged that his attorney had reviewed and explained the agreement to him. The Defendant expressed his satisfaction with his attorney and stated the attorney "[d]id a good job." The Defendant was given the opportunity to ask questions about pleading guilty but stated he had none. The Defendant stated that he understood the court would determine his sentence at a later date, and he said he hoped the court would show mercy to him and stated he would be "praying every day" until the sentencing hearing.

After hearing the proof, the trial court found that the Defendant "fully understood his rights" and what he was doing in pleading guilty. The court found that the Defendant had a lengthy history of criminal convictions and was "well versed in how to work the system and how to manipulate the system." The court found that the Defendant thought a possibility existed that the court would allow him a Community Corrections sentence or placement in the Jericho Project, that the Defendant's basis for seeking to withdraw his guilty pleas was his dissatisfaction with the consecutive, incarcerative sentences he received, and that the motion to withdraw the guilty pleas was an attempt "strictly to manipulate the system." The court also found that the Defendant elected, on the day the

-5-

first case was set for trial, to enter into an open-ended guilty plea because the Defendant viewed this as the better option. The court found that the Defendant was fully advised of the consequences of his plea. The court found that the Defendant failed to establish that manifest injustice existed and denied the motion to withdraw the guilty pleas.

Procedurally, this case is complicated by the Defendant's persistent pro se filings while represented by appointed counsel and by his lack of compliance with procedural rules while proceeding pro se. As such, we must preliminarily determine which, if any, issues raised in the appeal are properly before this court.

The sentencing hearing was conducted on August 11, 2015, and judgments were filed on that date. The Defendant was represented by counsel at the sentencing hearing. The record contains a pro se notice of appeal dated August 31, 2015, but it does not contain a file stamp. It contains a second pro se notice of appeal, which was filed on September 3, 2015. The record also contains an undated pro se "Notice of Intent to Appeal Certified Question of Law" regarding the court's ruling on a motion to suppress, which does not contain a file stamp. The record contains a pro se "Motion to [I]nvoke 6th Amendment Rights" alleging ineffective assistance of trial counsel. This motion contains a certificate of service dated August 28, 2015, but it does not contain a file stamp. On September 10, 2015, counsel filed a notice of appeal "from the final judgment." Due to a conflict of interests, the trial court appointed a different attorney to represent the Defendant on September 30, 2015. The Defendant filed his pro se "Notice of Withdrawal of Guilty Plea" on October 1, 2015.

On November 3, 2015, this court granted the Defendant's appointed attorney's motion to withdraw due to a conflict of interests and appointed an attorney who represented the Defendant at an earlier stage of the case. This court's order stated that the Defendant's appeal of the judgments was stayed pending resolution of the motion to withdraw the guilty plea and that if the Defendant appealed following any denial of the motion by the trial court, the appeal "shall" be consolidated with the already-pending appeal. On November 18, 2015, this court denied the Defendant's pro se motion for an extension of time to file a brief and directed that all future pleadings should be filed through counsel.

On February 2, 2016, the Defendant filed a second pro se document in the trial court seeking to withdraw his guilty pleas. The hearing on the motion to withdraw the guilty pleas, at which the Defendant was represented by his appointed counsel, occurred on February 18, 2016, and the court denied the motion by written order on February 19, 2016. In a March 10, 2016 order, the court granted the Defendant's motion to proceed pro se on appeal and, in a March 11, 2016 order, the court appointed advisory counsel to assist the Defendant. A notice of appeal was filed on March 11, 2016 by the attorney who was permitted to withdraw by the court's March 10 order. The notice stated that the appeal was "from the final judgment entered after defendant's petition to withdraw his

-6-

guilty plea on February 19, 2016." The Defendant filed a pro se notice of appeal on March 21, 2016. The notice specified that the Defendant was appealing from the court's order denying the motion to withdraw the guilty plea.

Against this background, we conclude that the Defendant, through counsel, filed a timely notice of appeal from the trial court's judgments and that the appeal was stayed by this court, pending the outcome of the motion to withdraw the guilty plea. The internal records of this court reflect, as well, that upon the filing of the notice of appeal from the denial of the motion to withdraw the guilty pleas, this case and the pending appeal, the latter of which had been stayed, were consolidated. Thus, we conclude that the issues related to the appeal following the sentencing and entry of judgments and to the appeal from the denial of the motion to withdraw the guilty pleas are properly before this court.

Regarding the State's argument that we should not consider the Defendant's appeal because his brief was untimely, we note that the State has calculated the Defendant's brief's due date by reference to the date of the September 10, 2015 notice of appeal, which appeal was stayed by this court's November 3, 2015 order. The record of this court reflects that once the notice of appeal from the denial of the motion to withdraw the guilty plea was filed, the Defendant filed various motions related to supplementation of the record, that this court ordered the trial court to resolve an issue regarding whether certain transcripts of pretrial proceedings were needed for resolution of the appeal, and that once the question of the state of the record was resolved, the Defendant filed his brief promptly. We, therefore, reject the State's argument that we should not consider the merits of the Defendant's appeal due to an untimely brief.

## I

## <u>Denial of Motion to Withdraw Guilty Pleas</u>

As we have stated, the Defendant filed a pro se notice of appeal from the trial court's denial of the motion to withdraw the guilty pleas. The State contends the Defendant has abandoned any argument that the trial court erred in denying the motion to withdraw the guilty pleas because the Defendant did not address the issue in his brief. We acknowledge that the Defendant's pro se brief falls short of addressing alleged errors in the court's ruling on the motion to withdraw the guilty plea, though it does allege that the court refused to rule on offers of proof submitted in support of the motion to withdraw the guilty plea. We will consider the issue, but we caution the Defendant that he proceeds pro se at his own peril relative to the adequacy of his brief, and we remind him that compliance with the Tennessee Rules of Appellate Procedure is expected from both represented and pro se litigants. *See* T.R.A.P. 27 (content of briefs).

Tennessee Criminal Procedure Rule 32(f) permits a defendant to withdraw a guilty plea after a sentence is imposed but before a judgment becomes final only to "correct [a]

manifest injustice." Tenn. R. Crim. P. 32(f)(2). A defendant has the burden of establishing a guilty plea should be withdrawn to correct a manifest injustice. *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The standard of review on appeal relative to a trial court's decision whether to grant a motion to withdraw is abuse of discretion. S*tate v. Drake*, 720 S.W.2d 798, 799 (Tenn. Crim. App.1 986); *see Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947). Although manifest injustice is not defined by procedural rules or statute, this court has stated it must be determined on a case-by-case basis. *Turner*, 919 S.W.2d at 355. A trial court may permit a defendant to withdraw his guilty plea to prevent a manifest injustice, in relevant part, when a guilty plea was involuntarily and unknowingly entered and when a defendant received the ineffective assistance of counsel in connection with the entry of the plea. *State v. Crowe*, 168 S.W.3d 731, 742 (Tenn. 2005). A defendant, though, is not permitted to withdraw a guilty plea simply because he has a change of heart or is dissatisfied with the sentence imposed. *Turner*, 919 S.W.2d at 355.

The trial court found that the Defendant's motion to withdraw the guilty pleas was an effort to manipulate the criminal justice system due to the Defendant's dissatisfaction with the sentence he received. The court found that the Defendant understood the terms of the plea agreement and entered into the agreement voluntarily. The court found that the Defendant failed to show a manifest injustice which needed correction by allowing the Defendant to withdraw the guilty pleas. Upon review, we conclude that the trial court did not abuse its discretion in denying the motion to withdraw the guilty pleas.

We have noted the Defendant's argument that the trial court refused to rule on "offers of proof submitted in motion to withdraw guilty plea," and we have reviewed the portions of the appellate record cited in support of the Defendant's argument. The record does not support a conclusion that the Defendant attempted to make an offer of proof pursuant to Tennessee Rule of Evidence 103(a)(2) and that such offer was rejected by the court. The Defendant's argument appears to be merely an alternative couching of his complaint that the court did not rule in his favor on the motion to withdraw the guilty pleas.

Likewise, we have not overlooked the Defendant's argument that the trial court failed to adhere to the requirements of *Boykin v. Alabama*, 395 U.S. 238 (1969), and *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), relative to a trial court's obligation to inquire and determine that a criminal defendant's guilty plea voluntarily and knowingly relinquishes or abandons constitutional rights of which the defendant is aware. The Defendant contends, specifically, that the court failed to advise him of the rights he waived by pleading guilty and of the possibility of consecutive sentencing. We note that the rights of which *Boykin* and *Mackey* require a defendant to be advised do not include, specifically, any right to be advised that he faces the possibility of consecutive sentencing. *See Boykin*, 395 U.S. at 244; *Mackey*, 553 S.W.2d at 341. The State contends that the right to appeal from a guilty plea is limited to situations which fit in the

narrow guidelines of Tennessee Rule of Criminal Procedure 37(b) and Tennessee Rule of Appellate Procedure 3(b), and that this court should decline to address the Defendant's issue relative to the knowing and voluntary character of his plea. *See State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000) (noting that "whether a defendant knowingly and voluntarily entered a guilty plea will rarely, if ever, be apparent from a record of the 'proceedings already had . . . .'" (citing Tenn. R. Crim. P. 37(b)(2)(iii); T.R.A.P. 3(b)(2))).

To the extent that the State construes the Defendant's argument, which we acknowledge is not a model of clarity, to be a constitutional challenge to the knowing and voluntary character of his guilty pleas, we agree that the issue is not properly before the court. *See* Tenn. R. Crim. P. 37(b); T.R.A.P. 3(b); *Wilson*, 31 S.W.3d at 192-94. To the extent, however, that the Defendant's argument regarding the alleged inadequacy of the advice he received at the guilty plea hearing may be construed as a component of his appeal from the trial court's denial of his motion to withdraw the guilty pleas, we have considered it. In denying the motion to withdraw the guilty pleas, the court found, after receiving the proof, that the Defendant was advised of his rights by counsel and by the court at the guilty plea hearing, that the Defendant knowingly and voluntarily relinquished his rights, and that as a result, no manifest injustice existed which required that the Defendant be allowed to withdraw his pleas. The Defendant is not entitled to relief on this basis.

## II

### Sentencing

The Defendant contends that the trial court erred in sentencing him more harshly than he deserved for the offenses. The State contends that the trial court did not abuse its discretion. We agree with the State.

This court reviews challenges to the length of a sentence within the appropriate sentence range 'under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id*.

The abuse of discretion with a presumption of reasonableness standard also applies to the imposition of consecutive sentences. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). A trial court has broad discretion in determining whether to impose consecutive service. *Id*. A trial court may impose consecutive sentencing if it finds by a preponderance of the evidence that one criterion is satisfied in Tennessee Code Annotated section 40-35-115(b)(1)-(7) (2014). In determining whether to impose consecutive sentences, though, a trial court must ensure the sentence is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4) (2014); *see State v. Desirey*, 909 S.W.2d 20, 33 (Tenn. Crim. App. 1995).

At the Defendant's sentencing hearing, trial counsel acknowledged that the Defendant was a Range III offender with fifteen prior felony convictions. Counsel requested initially that the hearing be bifurcated because the Defendant intended to submit an application for the Jericho Project. Counsel stated if the application were approved, the defense requested that the hearing be reconvened for the trial court to consider whether the Defendant would be allowed to participate as a component of a Community Corrections sentence. At the end of the hearing, however, counsel stated that the Defendant had changed his mind about being considered for the Jericho Project and wanted to move forward with the appeal process, and the Defendant acknowledged his agreement with his counsel's statement.

Neither party called any witnesses at the hearing, although the Defendant addressed the court in an allocution. He disputed a statement in the presentence report that he was a gang member. Regarding the prosecutor's argument that the Defendant had never been gainfully employed, the Defendant stated that he had held three full-time jobs in his life, the last being about seven years ago. He stated that most of his criminal history was from his younger days and that he had only received two felony convictions in the past ten years.

The presence report was received, which reflects that the then-forty-two-year-old Defendant committed the offenses by jumping on the counter at two fast food restaurants and grabbing money from the cash registers. In both instances, the Defendant physically kept the cashiers from the cash registers. The Defendant had a tenth grade education and a GED he earned during prior incarceration. His criminal history spanned his entire adult life. He reported fair mental health, daily alcohol and cocaine use until his arrest, past marijuana use, and past substance abuse treatment. He reported work though temporary employment agencies for the previous seven years.

Defense counsel argued that the Defendant had not employed a weapon in the offenses, that the offenses occurred as a result of the Defendant's drug addiction and unspecified mental health issues, and that the Defendant did not attempt to nor had any intent to harm anyone. The State argued that the Defendant was able to work but instead relied upon criminal activity to support himself, that he had an extensive record of criminal activity throughout his adult life, that the victims were lucky not to have been seriously injured, that the offenses took place in crowded businesses, that the Defendant had been given numerous opportunities for reform through both probationary and incarcerative sentences for past offenses, and that enhanced, consecutive sentences were appropriate.

The trial court stated that it had considered the purposes of sentencing and the sentencing considerations as stated in the Sentencing Reform Act, the presence report, and the arguments of counsel. The court found that the Defendant was a Range III offender. The court found that the Defendant's sentences should be enhanced based upon the Defendant's history of criminal convictions and behavior in addition to those used to establish his eligibility for Range III classification. *See* T.C.A. § 40-35-114(a) (2014) (amended 2016) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"). The court rejected the defense's argument that the sentences should be mitigated based upon the criminal conduct neither causing nor threatening serious bodily injury. *See id.* § 40-35-113(1) ("The defendant's criminal conduct neither caused nor threatened serious bodily injury[.]"). The court stated, "I think the conduct involved in both of these snatch and grab type robberies . . . do threaten serious bodily injury. Obviously there are all types of things that could occur as a result of somebody forcefully stealing money and the manner in which [the Defendant] did so." The court noted, as well, the potential for injury in light of citizens' having chased down the Defendant in both robberies. The court also rejected the defense's argument for mitigation based upon the Defendant's committing the offenses in order to provide necessity for himself or his family, which the defense proposed based upon the Defendant's drug addiction. *See id.* § 40-35-113(7) ("The defendant was motivated by a desire to provide necessities for the defendant's family or the defendant's self."). The court allowed mitigation pursuant to the "catch-all factor," however, based upon the Defendant's drug addiction. *See id.* § 40-35-113(13)

(providing for mitigation pursuant to "[a]ny other factor consistent with the purposes of this chapter").

The trial court observed:

> In imposing sentence, the Court finds that weighing the extensive record of [the Defendant] . . . versus the addiction to drugs that he suffers under and apparently has for a number of years, the Court finds in reviewing his history that[:]

> Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct.

> [The Defendant] has a long history of criminal conduct. Whether all of that is related to drugs, or not, he has been violating the law and the morals of society for the last twenty five years.

> Confinement is necessary to avoid depreciating the seriousness of the offense, or confinement is particularly suited to [provide] a deterrent to others likely to commit similar offenses.

> Again, I am aware of the problems and addictions that being addicted to drugs causes.

> However, these types of offenses, involving the robbery of businesses, with patrons present and clerks and other people who are simply there trying to do their job, being frightened. I can only imagine the type of fear, because they don't know, even if they recognize that [the Defendant] may be addicted to drugs, that may be all the more reason to be frightened and afraid when somebody leaps up on the counter, in the manner in which he is and snatches money out of the tray and don't know what to anticipate, or what to expect.

> I think those types of offenses are very serious and the Court feels that confinement is necessary to avoid depreciating how serious that is and also to provide a deterrent to others whom even though may be addicted to

drugs, but choose to make a livelihood using that type of modus operandi to rob and steal from people.

I do note that there have been, at least, on several occasions it appears in the past when [the Defendant] has been placed on probation and those efforts obviously have failed, because he has continued to break the law multiple times since those efforts were made, that the sentence imposed should be no greater than that deserved for the offense committed.

I have taken all those factors into account and the Court feels that the appropriate sentence in indictment 13-05021 should be a sentence of twelve years as a range three persistent offender and that will be the sentence that I will impose, taking into account the fact that once [the Defendant], for legal reasons, I forgot now, I believe there was [an] allegation that the victim wasn't able to come . . . to the preliminary hearing. There was some reason, but [the Defendant] was released from custody and just a week, or two later, in indictment 13-05966, did the same thing, again.

The Court, again, finds, that the enhancement factor of his lengthy [history of] criminal conviction[s] and criminal behavior weighed against his drug addiction and for the reasons considered under 40-35-103[,] the Court will impose a sentence of thirteen years as a range three persistent offender in that particular case.

In determining whether the sentences would be served concurrently or consecutively, the trial court found that the Defendant was an offender with an extensive record of criminal activity and that he was a professional criminal. *See id.* §§ 40-35-115(b)(1) (2014) (permitting consecutive sentencing upon a finding that "[t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood), 40-35-115(b)(2) (permitting imposition of consecutive sentencing if the trial court finds that "[t]he defendant is an offender whose record of criminal activity is extensive"). The court stated, "There are multiple thefts, there are multiple other offenses that [cause] the Court a great deal of concern[.]" The court also stated that the Defendant's "twenty-five years of committing offenses in this community justify an extensive sentence" and imposed consecutive sentences on that basis.

For his Class C felony convictions, the Defendant faced sentences of ten to fifteen years as a Range III offender for each offense. *See id.* § 40-35-112(c)(3) (2014). The trial court imposed mid-range sentences of twelve and thirteen years. On appeal, the Defendant complains that the court failed to specify its reasons for enhancing his

sentences above the statutory minimum. The Defendant's complaint is unfounded in view of the court's detailed findings of fact relative to the applicable enhancement and mitigating factors. The enhancement factor for previous history of criminal convictions and criminal behavior in addition to those used to establish the range is supported by the record, as is the court's allowance of mitigation for the Defendant's drug addiction. The Defendant has not shown that the court abused its discretion in setting the length of the Defendant's sentences at twelve and thirteen years based upon the presence of these factors.

The Defendant contends that the trial court abused its discretion in ordering consecutive sentences because the record fails to show the court considered relevant statutory sentencing considerations and principles of sentencing. He also contends that he was deprived of due process because the court failed to state on the record its reasons for imposing consecutive sentences. As we have stated, the court made detailed findings regarding the applicability of two statutory factors upon which consecutive sentencing may be based. It also made detailed findings relative to its consideration of the statutory sentencing considerations and principles of sentencing. Relative to the court's order of consecutive sentencing, it noted the Defendant's long history of criminal convictions and behavior in the community. The record reflects that the court relied more heavily on the Defendant's extensive record of criminal activity in imposing consecutive sentences. Although the court also relied on the professional criminal factor as a basis for consecutive sentencing, we note that despite the Defendant's lengthy criminal history, many of the offenses involved theft of relatively small amounts or involved criminal conduct which was unrelated to theft. We conclude that the record supports the trial court's findings relative to the consecutive sentencing factor for an extensive record of criminal activity but that it does not support its finding that the Defendant was a professional criminal who knowingly devoted his life to criminal activity as a major source of his livelihood. In any event, based upon the presence of the extensive criminal activity factor, the Defendant has not shown that the court abused its discretion in imposing consecutive sentences. He is not entitled to relief on this basis.

## III

## Denial of Rights to Due Process and Self-Representation

The Defendant contends that he was denied his rights to due process and self-representation in the trial court proceedings and that, as a result, he had no choice but to plead guilty. He complains that the court failed to rule on his "Motion to Suppress Evidence" and "Motion to Dismiss/Lesser Offense." The record reflects that these motions pertain to the adequacy of the affidavit of complaint in case number 13-05966 and the sufficiency of the allegations of indictment number 13-05021. He also complains

-14-

that the court issued an order denying his motion to supplement the appellate record with the "transcript and judgement [sic] sheets of hearing on motion dismiss remand T.R.C.P. Rule 5(e)."

As a preliminary matter, we note that in this court, the Defendant filed various motions to supplement the record that are relevant to this issue. The Defendant filed a motion requesting that the appellate record be supplemented with the trial court's order relative to a motion to dismiss, a motion to suppress, and the transcript of the hearing on the motion to dismiss. In response, the trial court clerk provided a certified statement that these documents were not in the clerk's file. This court then ordered the trial court to determine whether the requested proceedings should be transcribed and included in the appellate record. In its "Order Denying Request for Transcripts to Supplement Appellate Record," the trial court recounted relevant procedural history as follows:

> This cause came on to be heard on an Order from the Court of Criminal Appeals for this Court to determine whether requested proceedings should be transcribed at the State's expense to supplement the defendant's appellate record for his Motion to Withdraw his Guilty Plea. *The requested proceedings dealt with the defendant's request for a Court ordered preliminary hearing after indictment. He is requesting transcripts of a hearing on a Motion to Dismiss for failure to grant a proper preliminary hearing pre indictment. The Court granted the motion and the defendant was afforded a delayed preliminary hearing.* Subsequently he entered into a guilty plea on his trial date. He entered an open ended plea.
>
> . . . .
>
> After reviewing the files in this case the Court finds no justification for preparing at State expense transcripts for hearings and proceedings which have no bearing on the issue before the Court of Criminal Appeals. *The issues in question dealt with pretrial matters that were favorably ruled in the defendant's favor. At the time of those rulings the defendant was representing himself.*

(Emphasis added.)

Thus, the record reflects that the Defendant was permitted to proceed pro se on the motions he identified in his appellate brief, that he was afforded a hearing, and that the trial court granted his requested relief. Discussions on the record at the hearing on the motion to withdraw the guilty pleas reflect, as well, that the Defendant was afforded a hearing on the motions to dismiss and suppress, that he was permitted to represent himself, that the trial court granted his request for preliminary hearings on the indictments, and that those hearings occurred. To the extent that the Defendant now

-15-

complains that he was not allowed to proceed pro se and that the trial court failed to rule on his motions, the record does not support his allegations.

Insofar as the Defendant complains that he had no choice but to plead guilty due to the trial court's manner of conducting the proceedings, we decline to address the issue. This question is one which is more appropriately resolved in post-conviction proceedings. *See Wilson*, 31 S.W.3d at 195. Because the issue is not appropriate for review at this stage, the court appropriately ruled that the transcripts of the motions hearings were not necessary supplements to the appellate record.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE